IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROQUE ARANDA TERCERO,

    Petitioner,

v.                                                                                                                  No. 11-cv-1035 JCH/SMV

KENNETH J. GONZALES,
JANET NAPOLITANO,
ADRIAN MACIAS, and RAY TERRY,

    Respondents.

### ORDER FOR SUPPLEMENTAL BRIEFING

THIS MATTER is before the Court on a Petition For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] ("Petition"), filed on November 21, 2011. Respondent Terry filed his Response on December 16, 2011 [Doc. 10].[1] On March 20, 2011, the Honorable Judith C. Herrera, United States District Judge, referred this matter to the undersigned for analysis, findings of fact, and a recommended resolution. Order of Reference . . . [Doc. 20]. Having read the pleadings, the parties' briefs, and the pertinent caselaw and statutory authority, I find that supplemental briefing is required in order to determine whether Petitioner's continued detention without having received an individualized parole hearing before an Immigration Judge violates his due process rights under the Fifth Amendment.

### Background

Roque Aranda Tercero is a fifty-eight year old Mexican citizen who illegally entered this country by the age of twelve. He was educated and married in the United States, and has seven

---

[1] Respondent Terry was substituted as the sole respondent in this matter on November 29, 2011. Order [Doc. 8].

children, all born in the United States. He has more than twenty arrests and convictions for various crimes, including drug crimes, in California, Texas, and Mexico. *See*, *e.g.*, Asylum Interview [Doc. 2] at 1–5, 12 (supplement to Complaint), filed in *Aranda-Tercero v. Comisario*, No. 11-cv-0982 MCA/LAM; *Tercero-Aranda[2] v. Abbott*, No. 03-06-00740-CV, 2009 WL 483349, *1 (Tex. Ct. App.-Austin Feb. 27, 2009); *People v. Tercero-Aranda*, No. C041148, 2003 WL 22245909, *1 (Cal. App. 3 Dist. Oct. 1, 2003) (describing Petitioner's conviction for receiving stolen property and being a deported alien in the United States). He has been denied asylum at least once on a previous claim that he was tortured in Mexico; he has been deported at least four times; and he has served two stints in Mexican prisons on drug charges, once in 1987 and again from 2009-2011. *See* [11-cv-0982 Doc. 2] at 2-5; *Aranda-Tercero v. Gonzales*, No. 05-60650, 235 Fed. App'x 321 (5th Cir. Aug. 13, 2007).

Petitioner most recently reentered the United States and was taken into custody on September 3, 2011. [Doc. 1] at 3; [Doc. 1-2] at 1. He subsequently applied for asylum under the United Nations Convention Against Torture ("CAT"), claiming that he was tortured while incarcerated in Mexico. [Doc. 1-2] at 1; [Doc. 10] at 2. Immigration and Customs Enforcement ("ICE") officials classified him as an "arriving alien" without a valid entry document and initiated removal proceedings against him. *See* Notice To Appear, [Doc. 1-2] at 1; *see also* 8 U.S.C. § 1182(a)(7)(A)(i)(I) (stating that any immigrant "who is not in possession of a valid unexpired visa, reentry permit, border crossing identification card, or other valid entry document . . . is inadmissible."). Petitioner has been incarcerated at the Otero County Processing Center in New Mexico during the pendency of his removal proceedings. *Id.*; [Doc. 10] at 2.

---

[2] Petitioner is known by numerous aliases. *See* Notice to Appear [Doc. 1-2] at 1.

On September 16, 2011, Petitioner was interviewed by Citizenship and Immigration Services ("CIS") officials in connection with his application for asylum. *See* Credible Fear Worksheet, [Doc. 1-2] at 8. Based on that interview, the CIS officials found that Petitioner's claims of torture "could be found credible in a full asylum or withholding of removal hearing." *Id*. at 11. On September 21, 2011, Petitioner was informed that removal proceedings were being initiated against him and that, as an asylum applicant, he could petition for parole while his application was being adjudicated. *Id*. at 1-3. The possibility of parole was dependent on Petitioner establishing (i) his identity, (ii) that he would appear for all subsequent hearings and interviews, and (iii) that he did not pose a security risk to the United States or the community. *Id*. at 4. Petitioner applied for parole, but an ICE Field Office Director rejected the application on October 18, 2011, finding that Petitioner had failed to show that he did not pose a security risk to the community. [Doc. 1-1] at 1.[3] Petitioner was informed that he could renew his request for parole at any time, which he did on November 3, 2011. [Doc. 1-5] at 1-4. The record does not reflect whether his second request for parole was considered, but it is undisputed that Petitioner remains incarcerated to this date, more than a year after he was initially taken into ICE custody.

**Constitutionality of Petitioner's Continued Detention**

Although not artfully stated, one of Petitioner's claims for relief is that his continued detention without access to a bond hearing before an Immigration Judge ("IJ") violates his constitutional right to due process. *See, e.g.*, Petition, [Doc. 1] at 7, 10, 13; Supplemental Brief, [Doc. 24] at 1-2 (stating that he is entitled to a bond hearing before an IJ, rather than the ICE Field Office Director). He argues that this Court should either grant him parole or order that he

---

[3] Although the record does not explain why the Field Office Director found that Petitioner posed a danger to the community, the Court surmises that his lengthy criminal history was the primary reason behind this decision.

be granted a bond hearing before an impartial IJ. *See*, *e.g.*, [Doc. 24] at 1-4 (citing numerous federal cases considering whether inadmissible aliens have a due process right to parole or an individualized bond hearing). Respondent argues that that the Court should deny Petitioner's claim because neither an IJ nor this Court has the authority to review ICE's detention decision. *See* [Doc. 10] at 2-3. (citing, *inter alia*, 8 C.F.R. § 1003.19(h)(2)(i)(B); 8 U.S.C. § 1226(e)). A brief review of the statutory framework underpinning Petitioner's continued detention and the federal jurisprudence regarding ICE's detention and parole authority is in order.

    Before considering the constitutionality of Petitioner's continued detention, the Court must first determine under which immigration statute he is being held. Although Respondent did not explicitly state under which statute Petitioner is being held, it appears that he is being detained pursuant to either 8 U.S.C. § 1225(b)(1)(B)(ii) or 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(1)(B)(ii) provides that if immigration officials "determine[] that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." The statute further provides that any alien seeking asylum due to a fear of persecution shall be detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Section 1225(b)(2)(A), on the other hand, provides more generally for detention of persons classified as arriving aliens and states that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a]." Because Petitioner did not have any valid entry documents to the United States, he was not

"clearly and beyond a doubt entitled to be admitted" and was thus subject to detention as an arriving alien.

Having been detained as an arriving alien, Petitioner is entitled to petition for parole under 8 U.S.C. § 1182(d)(5). This statute gives the Attorney General (now the Secretary of the Department for Homeland Security) discretion to parole an arriving alien for "urgent humanitarian reasons." *Id*.[4] This discretionary decision has been well insulated from both administrative and judicial review by statute and regulation. With regard to administrative review, the right to grant parole to arriving aliens is vested solely in the Attorney General and her designated agent – in Petitioner's case the ICE Field Office Director – and IJ's have no authority to review custody decisions. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings."). Moreover, Congress has restricted federal courts' authority to review detention decisions in 8 U.S.C. § 1226(e), which states that "[t]he Attorney General's discretionary judgment regarding [custody decisions] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

Notwithstanding the regulations and statutes that give the Attorney General exclusive authority over detention, federal courts have found that judicial review of detention decisions is sometimes necessary to prevent constitutional abuses. The seminal case involving the constitutionality of prolonged or indefinite detention of aliens in removal proceedings is *Demore*

---

[4] 8 C.F.R. § 212.5 lists five classes of aliens who may be eligible for parole on humanitarian grounds under 8 U.S.C. § 1182(d)(5)(A). These classes include individuals who have serious medical conditions, pregnant women, juveniles, those who may be witnesses in American judicial proceedings, or those whose continued detention "is not in the public interest." *Id*. at § 212.5(b)(1)-(5).

*v. Kim*, 538 U.S. 510 (2003). In that case, a detainee argued that mandatory detention under § 1226(c) - which provides for mandatory detention of aliens who have previously been convicted of certain enumerated crimes - violated his Fifth Amendment Due Process rights and that he was constitutionally entitled to an individualized bond hearing. *Demore*, 538 U.S. at 514, 520 n. 5. The Supreme Court rejected that argument, noting that detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.'" *Id.* at 528. The Court approved the mandatory detention of individuals "during the limited period necessary for their removal proceedings." *Id.* at 526.

The Court's holding was partially based on statistical data which suggested that most deportation proceedings at the time took between one and five months. *Id*. at 530. The Court found that detention for this "brief period" did not rise to a due process violation. *Id*. at 523, 530. However, in a concurring opinion, Justice Kennedy noted that aliens detained pursuant to 1226(c) may be entitled to individualized bond hearings if the detention becomes "unreasonable or unjustified." *Id.* at 532. He noted that "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id*. at 532.

Although the Tenth Circuit has never squarely addressed this issue, numerous Federal Circuit Courts of Appeals and District Courts have construed the majority opinion and Justice Kennedy's concurrence in *Demore* to mean that prolonged and potentially indefinite detentions under 1226(c) can eventually rise to the level of a constitutional due process violation requiring

judicial relief. *See, e.g.*, *Ly v. Hanson*, 351 F.3d 263, 273 (6th Cir. 2003); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); *Alli v. Decker*, 644 F.Supp.2d 535 (M.D. Pa. 2009); *Madrane v. Hogan*, 520 F.Supp.2d 654 (M.D. Pa 2007). Most courts that have considered the issue "either have determined or are moving in the direction of finding that detention of pre-final orders of removal detainees for a lengthy period may raise constitutional concerns." *Prince v. Mukasey*, 593 F.Supp.2d 727, 735 (M.D. Pa 2008); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010) (noting that many courts have "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.").

While *Demore* and its progeny considered the constitutionality of mandatory detention under § 1226(c), several courts have extended *Demore*'s holding to find that lengthy or indefinite detention for arriving aliens under 8 U.S.C. § 1225(b) may become constitutionally infirm absent an individualized bond hearing. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078-80 (9th Cir. 2006) (holding that 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A) do not authorize indefinite detention); *Centeno-Ortiz v. Culley*, No. 11-1970, 2012 WL 170123, at *6-8 (S.D. Cal. Jan. 19, 2012) (rejecting that 8 U.S.C. § 1226(e) or DHS regulations prohibit judicial review of an alien's detention and holding that, once detention of an arriving alien becomes unreasonably long, "the government must justify any further detention by meeting its burden before a neutral decisionmaker."); *Kasneci v. Dir., Bureau of Immigration and Customs Enforcement*, No. 12-12349, 2012 WL 3930378, at *2 (E.D. Mich. Sep. 10, 2012) ("Although *Demore v. Kim* addressed the constitutionality of 8 U.S.C. § 1226, the same analysis is applicable under 8 U.S.C. § 1225(b)(2)(A) . . ."); *Lakhani v. O'Leary*, No. 08-2355, 2010 WL 3239013, at *6-7 (N.D. Ohio

7

Aug. 16, 2010), *overruled on other grounds by Lakhani v. O'Leary*, No. 08-2355, 2010 WL 3239013, at *1-2 (N.D. Ohio, Sep. 17, 2010) (rejecting claim that a federal court may not review constitutionality of prolonged detention under § 1225(b) and holding that, while "a lengthy detention during pre-removal proceedings in not *per se* unconstitutional . . . the government must be able to justify the deprivation of liberty" through a bond hearing consistent with the alien's right to procedural due process).

Having considered *Demore* and its progeny, the Court finds that neither 8 C.F.R. § 1003.19(h)(2)(i)(B) nor 8 U.S.C. § 1226(e) prohibits the Court from considering the constitutionality of Petitioner's continued detention. The question then becomes what factors to consider in deciding whether Petitioner's continued detention without access to a bond hearing before an impartial IJ violates his right to due process. Other courts have examined a variety of factors including, (i) the overall length of detention, (ii) whether actual removal is reasonably foreseeable, (iii) whether ICE has acted promptly to advance its interests, and (iv) whether the alien has engaged in dilatory tactics in the immigration court. *See*, *e.g.*, *Hansen*, 351 F.3d at 271-72; *Alli,* 644 F.Supp. at 541-42 (considering similar factors).

In this case, the Court lacks sufficient information to assess the constitutionality of Petitioner's continued detention. First, with regard to the overall length of detention, Petitioner has certainly been held for more than the five months identified in *Demore* as the outside range for most deportation proceedings. However, *Demore* dealt with removal proceedings for aliens held under § 1226(c), and this Court has no information as to the typical length of proceedings for inadmissible aliens seeking asylum under § 1225(b)(1)(B)(ii), or whether Petitioner's thirteen month detention exceeds that norm. Nor is it clear whether a final decision has been made on

Petitioner's request for asylum or whether resolution of his application is reasonably foreseeable. Likewise, the Court has no information as to whether ICE has moved expeditiously to resolve Petitioner's request for asylum, or whether Petitioner has engaged in any dilatory tactics which could be said to have lengthened his immigration proceedings. For these reason, the Court finds that supplemental briefing is necessary.

**IT IS THEREFORE ORDERED** that Respondent shall provide a supplemental brief regarding Petitioner's continued detention. In its brief, Respondent should advise the Court of the current state of Petitioner's proceedings as well as a procedural history of the proceedings to date. Respondent should also advise the Court of the typical length of asylum application proceedings for arriving aliens being held under 8 U.S.C. § 1225(b). Respondent will be permitted to make any arguments it feels appropriate regarding the reasonableness of Petitioner's continued detention.

**IT IS FURTHER ORDERED** that Respondent's supplemental brief shall be due within thirty days of this order.

**IT IS SO ORDERED**.

_____
STEPHAN M. VIDMAR
UNITED STATES MAGISTRATE JUDGE